FILED
2026 May-21 PM 07:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| GARRY CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER: |
| | ) | 5:26-cv-00084-HDM |
| CITY OF PRICEVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

Defendants ask this Court to dismiss every count of a 230-paragraph First Amended Complaint based largely on assertions that contradict its well-pleaded factual allegations and on attached exhibits whose factual content Plaintiff disputes. At the Rule 12(b)(6) stage the inquiry is plausibility, not ultimate proof. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The well-pleaded allegations must be accepted as true and every reasonable inference drawn in Plaintiff's favor. *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010).

The FAC alleges, with specific dates and actors: a sustained retaliatory campaign after Plaintiff reported on-duty corruption; a pre-determined termination

secretly authorized by the Mayor; a predetermination hearing presided over by that same Mayor at which exculpatory evidence was suppressed; a city-council appeal bound by a municipal policy making the Mayor's findings "conclusive"; the unredacted release of Plaintiff's personnel file to national media; a stigmatizing "no remorse" label the Mayor admitted was "bad wording"; weaponized state-database reporting against Plaintiff alone; and three concrete outside-agency employment denials. Those allegations, accepted as true, plausibly state every claim.

Defendants' Motion does not engage those allegations. It re-fights the disciplinary record, asks the Court to credit the Mayor's self-issued Certification at the pleading stage, treats reinstatement as a cure for every wrong that preceded it, and invokes immunities this Circuit has repeatedly held cannot be resolved on the pleadings where the complaint plausibly alleges malicious or unlawful conduct. The Motion should be denied in its entirety.

## II. STATEMENT OF MATERIAL ALLEGATIONS

The following allegations, taken from the First Amended Complaint, ("FAC" Doc. 7), are accepted as true for purposes of this Motion. *Iqbal,* 556 U.S. at 678.

1. Plaintiff Garry Chapman was hired as a Priceville police officer on January 28, 2025, and completed his six-month probationary period on July 28, 2025, vesting a property interest in continued employment under City policy. (FAC ¶¶ 25, 195.)

2. From mid-June 2025 forward, Plaintiff engaged in protected speech and petitioning, including reports to supervisors of Chief Holmes's plan to misuse federal seizure funds, a planned scheme to defraud the City of a K-9 asset, unauthorized NCIC/ACJIC access by another officer, and a coordinated cover-up of pursuit-policy violations by Officer Ferrell; Plaintiff also cooperated as a witness with criminal investigators from the Alabama Attorney General's Office. (FAC ¶¶ 2, 65–70, 133, 199, 211, 218.)

3. On September 6, 2025, Plaintiff initiated a vehicle pursuit. On September 8, 2025—before any investigation had been completed—Defendants Heflin and Holmes met privately and resolved on termination, and Heflin released Plaintiff's identity and unredacted personnel file to national and international media outlets including TMZ, Fox 54, WAAY 48, CNN, the New York Post, the New York Times, and the Daily Mail. (FAC ¶¶ 41, 72, 199(5).)

4. On September 19, 2025, Mayor Heflin—the same official who had preauthorized termination in private with Chief Holmes—served as the sole hearing officer at Plaintiff's pre-termination hearing. The exculpatory written statement of the Reserve Officer who was a passenger during the pursuit was withheld from the hearing record and was not produced to counsel until after the hearing concluded. (FAC ¶¶ 72, 76, 90, 246; Doc. 12-1 ¶ 21.) Mayor

Heflin issued findings ordering termination on September 22, 2025. (Doc. 12-1.)

5. Plaintiff's appeal to the City Council was governed by Personnel Policy § 7.3.6.5(c), under which "[t]he findings of the hearing officer shall be accepted as conclusive" and "[n]o evidence or testimony shall be presented by the employee that relates to or is connected in any way with the facts that were or should have been presented before the hearing officer." (FAC ¶¶ 106, 108, 111.) The Council reduced the discipline to a 10-shift suspension and ordered reinstatement on October 13–14, 2025 (Doc. 12-4) but, bound by the policy, did not disturb the underlying findings. The Mayor's Certification expressly stated Plaintiff showed "no remorse" for the fatality (Doc. 12-1); Heflin later admitted that wording was "bad wording" yet refused to retract or correct the publicly disseminated finding. (FAC ¶¶ 199(10), 219(d).)

6. After reinstatement, Chief Holmes communicated his explicit intent to ensure Plaintiff would never obtain another law-enforcement position and immediately directed Assistant Chief Wilbanks to enter Plaintiff's discipline, including prior reprimands Wilbanks had never previously been given access to, into the State APOSTC RADIUS database. When Wilbanks requested comparable reprimand records for other officers, including Officer Ferrell's reportable joint write-up for miscounting federal seizure funds, none were provided. (Wilbanks Aff. ¶¶ 16–17; FAC ¶¶ 130, 159, 194(f), 238.) Plaintiff

thereafter applied to and was denied employment by Limestone County, the Hayden Police Department, and the Oneonta Police Department following background reviews disclosing the RADIUS entries and media coverage. (FAC ¶ 175.)

7. On October 23, 2025, Plaintiff filed a petition for common-law writ of certiorari in the Circuit Court of Morgan County, expressly challenging the City's policies and procedures as "violative of the Petitioner's right to due process." (Doc. 12-3 ¶ 10.)

8. Before September 6, 2025, Plaintiff had conducted more than twelve pursuits, all commended by Chief Holmes, who personally authorized a performance-enhancing cold-air intake on Plaintiff's patrol vehicle. (Jones Aff. ¶¶ 5, 10.) A pending Sergeant promotion was revoked and further promotions frozen. (FAC, Damages section.) Independent expert Marlon Marrache—former LAPD Internal Affairs Associate Advocate—has

concluded under oath that Plaintiff was 100% justified, that the fatality was caused solely by the fleeing suspect (DUI, fentanyl, ran a red light at 100+ mph), and that the 5-day rush to termination violated industry-standard 45to-90-day review protocols. (Marrache Aff. ¶¶ 4–16.) Assistant Chief Wilbanks has sworn that Plaintiff was "one hundred percent (100%) justified," that the

termination was "predetermined," and that Mayor Heflin himself stated Plaintiff was "a good officer" he "did not want to terminate." (Wilbanks Aff. ¶¶ 10–13, 34.)

Plaintiff disputes the factual recitations in Doc. 12-1 and Doc. 12-4 as the very acts the FAC alleges to be unconstitutional. The limits *Day v. Taylor,* 400 F.3d 1272 (11th Cir. 2005), places on those exhibits at the pleading stage are addressed in Section O.

## III. STANDARD OF REVIEW

To survive Rule 12(b)(6), a complaint must contain factual matter, accepted as true, that states a claim to relief plausible on its face. *Iqbal,* 556 U.S. at 678. The court "accept[s] the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor," *Keating,* 598 F.3d at 762, and the question is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," *Speaker v. U.S. Dep't of Health & Human Servs.,* 623 F.3d 1371, 1380 (11th Cir. 2010). Heightened pleading is not required for civil-rights claims. *Randall v. Scott,* 610 F.3d 701, 708–10 (11th Cir. 2010). Where qualified immunity or another affirmative defense is raised at the pleading stage, dismissal is appropriate "only when the complaint shows on its face that the defendants are entitled to immunity," *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002), and allegations of malicious, willful, or unlawful conduct

preclude qualified-immunity dismissal on the pleadings, *Skop v. City of Atlanta,* 485 F.3d 1130, 1136–38 (11th Cir. 2007).

Plaintiff submits with this Response three sworn affidavits (Exhibits 1–3) from Marlon Marrache (law-enforcement expert), Assistant Chief Jason Wilbanks (Department's second-ranking officer), and former Investigator Terry Jones. The affidavits confirm that the FAC's allegations rest on a developed evidentiary record; Plaintiff does not ask the Court to rely on them to deny the Motion, which the well pleaded FAC alone defeats, but if the Court considers them and converts the Motion to one for summary judgment under Rule 12(d), denial is **even more strongly warranted**.

## IV. ARGUMENT

### A. The First Amended Complaint Is Not a Shotgun Pleading.

Defendants' lead argument—that the FAC is a shotgun pleading—fails under *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1321–23 (11th Cir. 2015), the very case they invoke. *Weiland* identifies four categories of shotgun pleading; it then **reversed** the dismissal before it because the complaint gave defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The FAC clears that bar: each Count identifies the

specific defendant(s), the legal theory, and the specific conduct (by date, act, and actor) alleged to violate it. FAC ¶ 199 pairs each protected act with a named retaliatory response and named responsible defendant—the antithesis of a shotgun pleading. Length is not a shotgun defect: a complaint is not improper merely because it is detailed. *Weiland,* 792 F.3d at 1325 n.14. Defendants' alternative Rule 12(e) request fails because the FAC provides notice sufficient for them to frame a responsive pleading. 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1377 (3d ed.).

### B. The Official-Capacity Claims Should Be Treated as Claims Against the City, Not Dismissed.

Official-capacity claims against municipal employees are functionally claims against the municipality. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). The official-capacity claims pleaded here therefore add nothing the City-Defendant does not already supply, and may be addressed administratively as a single claim against the City of Priceville without dismissal of any individual-capacity claim and without prejudice to any substantive theory pleaded.

### C. Defendant Sanderson Acted Under Color of State Law.

Defendant Sanderson is alleged to have done far more than "perform[] traditional legal functions as counsel." *Cf. Polk County v. Dodson,* 454 U.S. 312, 325 (1981). The FAC alleges Sanderson **presided** as the City's appointed officer over the

post-deprivation appeal hearing, controlled the public release of Plaintiff's personnel file, suppressed the Reserve Officer's exculpatory statement, and coordinated with Mayor Heflin to engineer a pre-determined outcome. (FAC ¶¶ 90, 106, 111, 195–96, 199(7), 246, 251.) A private actor who jointly engages with state officials, or performs a function traditionally reserved to the State, acts under color of state law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941 (1982); *Dennis v. Sparks,* 449 U.S. 24, 27–28 (1980); *Brentwood Academy v. TSSAA,* 531 U.S. 288, 295–96 (2001) (entwinement). Sanderson's on-record statement "I make decisions about what I put in that" (FAC ¶ 90) confirms governmental, not representational, conduct. Defendants' alternative "either qualified immunity or no state action" framing is internally inconsistent: if Sanderson is not a state actor, immunity is irrelevant; if he is, immunity depends on facts that cannot be resolved on the pleadings.

### D. No Individual Defendant Is Entitled to Qualified Immunity at the Pleading Stage.

Qualified immunity "does not protect those who knowingly violate the law," *Hope v. Pelzer,* 536 U.S. 730, 741–42 (2002), and on a Rule 12(b)(6) motion is appropriate only if the complaint fails to allege the violation of a clearly established right, *St. George,* 285 F.3d at 1337; allegations of willful, malicious, retaliatory

conduct outside any discretionary authority foreclose immunity at the pleadings, *Skop,* 485 F.3d at 1136–38. Each right at issue was clearly established before September 2025: public employees' right against retaliation for protected speech, *Lane v. Franks,* 573 U.S. 228, 235–40 (2014); the right to a meaningful pretermination hearing before a neutral decision-maker, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542–46 (1985); the right against deliberate suppression of exculpatory evidence in a hearing affecting a protected interest, *Mathews v. Eldridge,* 424 U.S. 319 (1976); and the right to a name-clearing process where stigmatizing statements attend discharge, *Cotton v. Jackson,* 216 F.3d 1328 (11th Cir. 2000).

### E. Counts I and II State Plausible First Amendment Retaliation Claims.

#### *1. Plaintiff plausibly alleges speech as a citizen on matters of public concern.*

Defendants invoke *Garcetti v. Ceballos,* 547 U.S. 410 (2006), but ignore *Lane v. Franks,* 573 U.S. 228 (2014), which makes plain that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* at 240. "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Id.* at 240. Reporting public corruption, threatened misuse of federal seizure funds, fraud against the City, and unauthorized law-enforcement-database access is **not** ordinarily within the scope of a patrol

officer's duties—and is unquestionably a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 146–49 (1983); *Pickering,* 391 U.S. at 571–72.

The FAC alleges that Plaintiff reported (1) Chief Holmes's plan to misuse federal forfeiture funds to acquire a personal luxury vehicle (FAC ¶¶ 65–70); (2) a planned scheme to defraud the City of a K-9 asset (FAC ¶ 199(1)); (3) unauthorized NCIC/ACJIC access by a fellow officer (FAC ¶¶ 199(6), 274(e)); (4) cover-up of pursuit-policy violations by Officer Ferrell (FAC ¶¶ 59–62); and (5) the falsity of the publicly disseminated "no remorse" characterization. (FAC ¶¶ 199(10), 219.) Each falls outside the ordinary scope of patrol duties and addresses matters of public concern—public corruption, fraud against the City, misuse of federal funds, and unauthorized access to law-enforcement databases. *Lane,* 573 U.S. at 240–41; *Moss v. City of Pembroke Pines,* 782 F.3d 613, 618–20 (11th Cir. 2015). The reports concerning unauthorized NCIC/ACJIC access implicate federal criminal law, see 18 U.S.C. § 1030 (Computer Fraud and Abuse Act), and the reports of misuse of federal forfeiture funds implicate Department of Justice equitable-sharing program restrictions—matters of weighty public concern far outside any patrol officer's ordinary duties.

Two facts compound the public-concern showing. **First,** the corruption reported was the **Chief of Police's own** planned misuse of federal forfeiture funds to acquire a personal luxury vehicle (FAC ¶¶ 65–70, 199(2)); speech reporting the

agency head's personal misconduct is paradigmatic public-concern speech, *Pickering,* 391 U.S. at 571–72. **Second,** Plaintiff reported the same officer (Ferrell) for an escalating series of misconduct incidents over many months. Repeated, unaddressed reports of serious agency misconduct transform routine chain-ofcommand communication into citizen speech as a matter of degree, *Lane,* 573 U.S. at 240; *Connick,* 461 U.S. at 146–49.

Plaintiff's **cooperation with criminal investigators from the Alabama Attorney General's Office** (FAC ¶¶ 133, 199(11), 211, 218) lies wholly outside any patrol officer's ordinary chain-of-command duties and is independently protected speech and Petition Clause activity. *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 387–89 (2011). Less than six days after Mayor Heflin learned of that cooperation and reacted with visible anger, Plaintiff's pre-approved homicideinvestigator training—for which he was the sole originally designated attendee— was cancelled. (FAC ¶¶ 133–37, 199(11).) That sequence is direct circumstantial evidence of retaliatory motive at the pleading stage. That Plaintiff first reported up the chain of command before going outside it does not, under *Lane*, convert citizen speech into job duty.

***2. Plaintiff plausibly alleges adverse action and causation.***

The adverse actions are, on any view, materially adverse: termination, suspension, public release of an unredacted personnel file, weaponized RADIUS entries, denial of training and overtime, denial of the previously-pending Sergeant

promotion, and a campaign of professional isolation. The FAC alleges a tight temporal pattern of protected speech followed by adverse response, often within days. (FAC ¶ 199.) Causation can be inferred from close temporal proximity coupled with a pattern of conduct hostile to the plaintiff. The FAC also alleges direct evidence of motive: Chief Holmes's explicit threat after Plaintiff's reinstatement to ensure Plaintiff would "never obtain[] employment in law enforcement again," coupled with his immediate direction to make selective RADIUS entries. (FAC ¶ 194(f).) That is more than enough at the pleading stage. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977).

***3. The City Council did not sever causation.***

Defendants argue that the Council's reduction of the discipline severs causation as a matter of law under *Stimpson v. City of Tuscaloosa,* 186 F.3d 1328 (11th Cir. 1999). It does not, for three reasons.

First, *Stimpson* requires a **genuinely independent** decisionmaker. "When the biased recommender and the actual decisionmaker are not the same person or persons, the bias of the recommender alone is not enough to taint the decision—unless the plaintiff can show that the recommender had such influence or leverage over the actual decisionmaker that it is proper to consider the recommender as being

the actual decisionmaker." *Id.* at 1332. Here the FAC alleges, and a written city policy confirms, that the Council was **not** permitted to act independently. Personnel Policy § 7.3.6.5(c) commanded the Council to accept the Mayor's findings as "conclusive" and forbade the employee from contesting them. (FAC ¶¶ 106–11.) A decisionmaker bound by a rule mandating acceptance of a tainted official's findings is the conduit *Stimpson* warned about, not its antidote.

Second, the Council **did not reverse** or repudiate the underlying findings; it could not. It **imposed discipline**, reduced from termination to a 10-shift suspension. (Doc. 12-4 at 1–2.) That is not exoneration; that is partial ratification. The Council's reduction does not establish that the underlying findings were valid; it shows that the policy required the Council to discipline based on findings it could not test.

Third, *Stimpson* was decided on summary judgment with a developed record. Whether the Council served as a conduit for an unlawfully motivated termination is a quintessentially fact-bound question that cannot be resolved on the pleadings. The Eleventh Circuit recognizes that an ostensibly independent decisionmaker may serve as a "cat's paw" where it does not exercise meaningful independent judgment, see *Quinn v. Monroe County,* 330 F.3d 1320, 1328–29 (11th Cir. 2003), and that question turns on a developed record.

### F. Count III States a Plausible Class-of-One Claim Limited to Selective RADIUS Reporting.

Defendants' reliance on *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591 (2008), is misplaced. *Engquist* held that class-of-one theories do not apply to "discretionary, individualized" public-employment decisions because such decisions, "by their nature, involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603. *Engquist* expressly preserved class-of-one challenges where there exists "a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* at 602–04 (citing *Allegheny Pittsburgh Coal Co. v. County Comm'n,* 488 U.S. 336 (1989), and *Olech,* 528 U.S. 562). And the long-recognized rule that selective enforcement of an even-handed law against a single individual violates equal protection has never been abrogated. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74 (1886). Count III sits squarely within these preserved zones.

Two features of the alleged conduct take it outside *Engquist*'s "discretionary employment" bar. **First,** RADIUS reporting is not a discretionary employment act. Alabama Code § 36-21-55.1 imposes a **mandatory**, standardized, 30-day reporting obligation triggered by final disciplinary action. (FAC ¶ 63.) Whether to report is not subject to discretion; the statute commands it. Selective enforcement against one officer while shielding similarly situated officers from a **mandatory state-law obligation** is the paradigmatic case *Engquist* left untouched.

On the pleadings, Plaintiff has alleged a clear standard (§ 36-21-55.1), comparators who were subject to identical reporting triggers (FAC ¶¶ 63, 176, 178, 238), and an admission by Assistant Chief Wilbanks that he was directed to enter a RADIUS report only as to Plaintiff. (FAC ¶¶ 159, 238.) Whether comparators are "similarly situated in all material respects" under *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1204–06 (11th Cir. 2007), is fact-bound and not properly resolved on a motion to dismiss. *Id.* at 1206 ("the 'similarly situated' requirement must be evaluated in light of the context of the action"); *Village of Willowbrook v. Olech,* 528 U.S. 562, 564–65 (2000) (per curiam).

**Second,** the RADIUS database operates as an external regulatory control on Plaintiff's ability to obtain or hold an APOSTC commission—the same operational role a professional license registry plays for any other regulated occupation. The **Engquist** Court itself distinguished the government-as-employer from the government acting in "its capacity to regulate." 553 U.S. at 598. Because RADIUS entries control Plaintiff's qualification for the APOSTC commission—a **nonemployment regulatory function** by which the State controls who may serve in the law-enforcement profession at all—selective enforcement of that mandatory reporting obligation is the regulator-as-licensor act *Engquist* left untouched. The kind of arbitrary, individually targeted regulatory enforcement that Assistant Chief Wilbanks has documented in sworn written communications to the full City Council (FAC ¶¶ 130, 238) is the paradigmatic class-of-one violation. *Olech,* 528 U.S. at 564.

Defendants' predictable response—that no comparator is "similarly situated" because Plaintiff's pursuit ended in a fatality—inverts the governing standard. The question is whether a **policy violation** occurred, not whether a tragic outcome resulted; pursuit conduct is judged on the officer's decisionmaking at the time, *see Scott v. Harris,* 550 U.S. 372, 384–86 (2007), not on hindsight. Expert Marrache (former LAPD Internal Affairs Associate Advocate) has sworn that conflating the two "is both professionally improper and legally indefensible." (Marrache Aff. ¶ 15.) Assistant Chief Wilbanks has sworn that Ferrell's 130+ mph defiance of a direct supervisory termination order without emergency equipment was "categorically more dangerous and more egregious" than Plaintiff's pursuit yet drew no discipline. (Wilbanks Aff. ¶ 8.) Former Investigator Jones swore he had himself conducted pursuits "of a far higher risk profile" than Plaintiff's September 6 pursuit and was never disciplined—because no one died. (Jones Aff. ¶ 9.) That is the very arbitrary, single-officer enforcement *Olech* and *Yick Wo* condemn.

## G. Count IV States a Plausible Procedural Due Process Claim.

### 1. *McKinney does not bar this claim because Alabama provides no adequate post-deprivation remedy.*

*McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994) (en banc), holds that a procedural due process violation "is not complete unless and until the State refuses

to provide due process" and that an adequate state post-deprivation remedy may suffice. *Id.* at 1557. The remedy must be **adequate** to redress the constitutional violation alleged. *Cotton,* 216 F.3d at 1331. Alabama's common-law writ of

certiorari is not.

On certiorari review the Circuit Court is confined to the administrative record. The reviewing court "may not retry the case but may only review the validity of the proceedings before [the agency]." *Personnel Bd. of Jefferson Cnty. v. Bailey,* 475 So. 2d 863, 866 (Ala. Civ. App. 1985). Review is limited to whether the decision is supported by substantial evidence and is not arbitrary or capricious. *Williams v. City of Anniston,* 396 So. 2d 707, 708 (Ala. Civ. App. 1981). The remedy is reversal, modification, or remand—not damages, and not constitutional adjudication. The cert proceeding cannot reach the structural bias of a hearing officer who pre-authorized termination, the deliberate suppression of exculpatory evidence, the use of § 7.3.6.5(c) to bar appellate review of bias, the First Amendment retaliation claims, the stigma-plus liberty interest claims, or any monetary damages.

A state proceeding that cannot reach the constitutional violations alleged is not an adequate remedy under *McKinney*. *Cotton,* 216 F.3d at 1331 (state remedy must be "adequate" and address the type of deprivation alleged); *McKinney,* 20 F.3d at 1563. The Supreme Court has long recognized that where the State's own scheme is the source of the constitutional defect, an after-the-fact corrective remedy cannot satisfy due process. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437 (1982).

Section 7.3.6.5(c) is precisely such a scheme: the City's own appellate procedure forecloses meaningful review of the very pre-deprivation defect alleged. The pendency of the state cert petition therefore does not bar this action; it confirms only that Plaintiff is pursuing whatever limited correction state law may provide as to the disciplinary decision itself, while preserving the constitutional claims this Court alone can adjudicate. *England v. La. State Bd. of Med. Examiners,* 375 U.S. 411, 415–22 (1964).

***2. The pre-termination hearing was not constitutionally adequate.***

Due process requires "oral or written notice of the charges …, an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story" before a **neutral** decisionmaker. *Loudermill,* 470 U.S. at 545–46; *Goldberg v. Kelly,* 397 U.S. 254, 271 (1970) (impartial decisionmaker is essential element of due process). "[N]o man is permitted to try cases where he has an interest in the outcome," *Tumey v. Ohio,* 273 U.S. 510, 523 (1927), and a hearing officer who has prejudged the case or has a personal stake in the outcome is constitutionally unfit to preside. *Withrow v. Larkin,* 421 U.S. 35, 46–47 (1975); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242–43 (1980); *Ward v. Vill. of Monroeville,* 409 U.S. 57, 60 (1972). The Supreme Court has reaffirmed that due process is denied where "the

probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 877 (2009). The FAC alleges (a) that Mayor Heflin met privately with Chief Holmes prior to any disciplinary notice and resolved on termination; (b) that Mayor Heflin then designated himself as the sole hearing officer at the very hearing supposedly meant to test that question; and (c) that Heflin held a personal political stake in the outcome—using Plaintiff as a public scapegoat to deflect criticism arising from the September 6 incident. (FAC ¶¶ 71–76, 108, 193, 199(4), 266.) Under *Caperton* and *Withrow*, that combination of pre-judgment and personal stake is the paradigmatic case of constitutional bias. The expert and witness affidavits filed herewith remove any pleading abstraction: Marrache (former LAPD IA Associate Advocate, 30+ Board of Rights hearings) has sworn that the 5-day rush, the absence of any debrief or Vehicle Pursuit Report, and Chief Holmes acting "simultaneously as the investigator, charging authority, and adjudicator" rise to "the level of a violation of due process principles" (Marrache Aff. ¶¶ 9–11); Wilbanks has sworn the City Attorney advised against immediate action and Mayor Heflin himself said Plaintiff was "a good officer" he "did not want to terminate," yet the termination proceeded (Wilbanks Aff. ¶ 13); and the Department amended its pursuit policy to be stricter within one month of the termination—unnecessary if the prior policy had truly been violated (Marrache Aff. ¶ 16).

Further, the deliberate suppression of Reserve Officer Lawrimore's exculpatory written statement—disclosed only *after* the hearing concluded—is alleged to have deprived Plaintiff of a meaningful opportunity to present his side of the story. (FAC ¶ 246; Doc. 12-1 ¶ 21.) Even Defendants' own attached Certification confirms that the statement existed, that counsel asked for it, and that it was not produced until after the hearing. (Doc. 12-1 ¶ 21.) "Fundamental fairness" in administrative proceedings is denied where material exculpatory evidence is withheld. *Mathews,* 424 U.S. at 333–35. That this occurred is a fact-bound issue plainly inappropriate for resolution on the pleadings.

### ***3. The Council appeal cannot cure the pre-termination defect.***

Defendants argue that the appeal to the Council provided adequate process. The argument fails on its own terms. The Council was constrained by Personnel Policy § 7.3.6.5(c)—an **officially promulgated municipal policy**—that mandated acceptance of the Mayors' findings as "conclusive" and forbade the employee from contesting them. (FAC ¶¶ 106, 111.) A post-deprivation remedy that incorporates by rule the very defect alleged in the pre-deprivation hearing is not a remedy at all. *Cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437–38 (1982) (state's own scheme cannot cause the constitutional harm).

## **H. Count V States a Plausible Stigma-Plus Liberty Interest Claim.**

To plead a stigma-plus liberty deprivation, Plaintiff must allege a publicly disseminated false statement of stigmatizing nature, made by the government, attending an alteration of legal status, without a meaningful name-clearing opportunity. *Cotton,* 216 F.3d at 1330; *Buxton v. City of Plant City,* 871 F.2d 1037, 1042–46 (11th Cir. 1989).

Defendants' argument focuses solely on the "discharge" element, asserting that Plaintiff's reinstatement defeats the claim. That argument misreads *Cotton* and ignores *Buxton*, which recognized stigma-plus where stigmatizing statements were disseminated in connection with an **actual termination** that was later reversed. The relevant question is whether the State's **act** altered the plaintiff's legal status and was accompanied by stigmatizing public disclosure—not whether the alteration was permanent.

Plaintiff satisfies the alteration-of-status element on multiple, independently sufficient grounds. **First,** Plaintiff was actually terminated on September 22, 2025 (Doc. 12-1), and the unredacted personnel file and stigmatizing official findings were released to national media on or about October 8, 2025—while the termination was operative. (FAC ¶¶ 199(5), 215, 219, 250.) That the City Council later reduced the discipline does not retroactively undo the dissemination that occurred during the period of termination. **Second,** the operative discipline today—a 10-shift suspension —is itself an alteration of legal status sufficient to satisfy the "plus" element when accompanied by the public dissemination of stigmatizing findings. *See Buxton v. City*

*of Plant City,* 871 F.2d 1037, 1042–46 (11th Cir. 1989) (publicly disseminated stigmatizing material in connection with internal-affairs action). **Third,** the postreinstatement RADIUS entries have produced concrete, documented foreclosure of three identified law-enforcement positions—Limestone County, Hayden PD, and Oneonta PD. (FAC ¶ 175.) Whether viewed as "plus" elements attendant to the suspension or as separately actionable government dissemination of stigmatizing information attending an alteration in Plaintiff's state-recorded disciplinary status, those denials supply the tangible harm *Cotton* requires.

Defendants also argue that the "no remorse" statement is non-actionable opinion. That argument misstates the FAC. The Mayor *certified* the "no remorse" characterization as a **finding of fact**—and then admitted that wording was "bad wording." (FAC ¶¶ 199(10), 219(d).) An official sworn finding that an employee "showed no remorse" for a fatality, captured in the Certification of Findings and Discipline and disseminated to the national media, is presented and received as fact, not opinion, *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–20 (1990), and is on its face stigmatizing.

**I. Count VI States a Plausible Civil Conspiracy Claim.**

Defendants' invocation of the intracorporate conspiracy doctrine fails for two independent reasons.

First, the doctrine does not apply where the alleged conspiracy includes an actor outside the corporate unit. *Dickerson v. Alachua Cnty. Comm'n,* 200 F.3d 761, 768 (11th Cir. 2000). Defendant Sanderson is alleged to be "outside counsel"—not an employee of the City. (FAC ¶ 196; Doc. 12 at 16 (Defendants' own characterization).) An outside lawyer who joins with City officials to deprive a plaintiff of constitutional rights is a third actor, and the conspiracy is between separate persons within the meaning of *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036–38 (11th Cir. 2000) (en banc). That fact alone defeats the intracorporate defense at the pleading stage.

Second, even as to the City defendants, the FAC pleads facts plausibly establishing the personal-stake exception recognized by the Eleventh Circuit. *Grider v. City of Auburn,* 618 F.3d 1240, 1262–64 (11th Cir. 2010); *McAndrew,* 206 F.3d at 1036–38. The FAC alleges Holmes acted out of his personal political interest in his Sheriff candidacy; Heflin acted out of his personal electoral interest in deflecting public criticism; and Wigginton acted to protect his close personal friend Officer Ferrell. (FAC ¶¶ 71, 194, 196, 199, 266.) Personal political and personal-relationship stakes detached from any legitimate governmental purpose place the defendants outside the protective scope of the doctrine.

Third, the alleged conduct includes acts that violate criminal and statutory law, taking the conspiracy outside the doctrine altogether. The *McAndrew* en banc court

itself recognized that the intercorporate doctrine does not shield conspiracies to commit criminal acts. 206 F.3d at 1041–42; *United States v. Hartley,* 678 F.2d 961, 970 (11th Cir. 1982). The unredacted public release of confidential personnel records identified by Plaintiff—including home address, biometric data, driver's license information, and signatures—violates Alabama Code §§ 41-13-7 and 41-137.1, statutes specifically enacted to protect law-enforcement-officer personal information. (FAC ¶¶ 102, 187, 215.) Conspiracies to commit unlawful acts of that character do not enjoy intercorporate protection.

Fourth, the FAC alleges underlying constitutional violations and an agreement among the Defendants. The 14-step chronological causation map (FAC ¶ 199), the explicit ex parte coordination between Holmes and Heflin (FAC ¶ 72), the orchestrated suppression of the Reserve Officer's statement, the deliberate breach of whistleblower confidentiality through Wigginton tipping off Officer Ferrell (FAC ¶ 274(e)), and the concerted post-reinstatement conduct in violation of the Council's order (FAC ¶ 274(f)) together plausibly allege "an understanding" among the defendants to violate Plaintiff's rights. *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir. 2008). Whether they will prove their conspiracy is for discovery and trial.

**J. Count VII States a Plausible Monell Claim.**

The FAC identifies more than failure-to-train conclusions. It identifies the constitutional rights violated—First Amendment retaliation; procedural due process; equal protection in the form of selective state-law enforcement; liberty-interest stigma—and identifies **an officially promulgated municipal policy** that was a moving force behind several of those violations: Personnel Policy § 7.3.6.5(c), which strips appellate review of authority to disturb the hearing officer's findings and forbids the employee from contesting them. (FAC ¶¶ 106–11, 240–49.) An "official municipal policy of some kind must be the moving force" behind the violation, *Connick v. Thompson,* 563 U.S. 51, 60–61 (2011); a single official policy adopted by lawmakers is sufficient. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81 (1986); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–94 (1978).

Beyond the formal policy, the FAC alleges actionable customs: the disparate, selective application of RADIUS reporting; the unredacted release of confidential personnel records to the press; and the documented pattern of protecting favored officers from discipline (Officer Ferrell's undisciplined misconduct over June 2025 through February 2026). *Grech v. Clayton Cnty.,* 335 F.3d 1326, 1329–30 (11th Cir. 2003).

The FAC also alleges Monell liability under the **ratification** theory. A municipality is liable when a final policymaker ratifies the unconstitutional act of a subordinate. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988). Here, the City Council (acting as the City's final policymaker on appeals) was bound by § 7.3.6.5(c)

to accept the Mayor's tainted findings as conclusive and reduced—but did not vacate—the underlying discipline. (Doc. 12-4 at 1–2.) That conduct ratified the constitutionally infirm process. The Mayor likewise possesses final, unreviewable authority over termination, media communications, and grievance decisions (FAC ¶ 193) and authored each of the public dissemination acts at issue. *Pembaur,* 475 U.S. at 480–81; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403–06 (1997). At the pleading stage no more is required.

## K. Count VIII States a Plausible Tortious Interference Claim.

Under Alabama law, tortious interference requires: (1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) intentional interference; and (5) damage. *White Sands Grp., L.L.C. v. PRS II, LLC,* 32 So. 3d 5, 14 (Ala. 2009). All five elements are pleaded.

Defendants are correct that the individual Defendants are not strangers to Plaintiff's employment relationship with the City—and Count VIII does not rely on that relationship. The FAC alleges interference with Plaintiff's prospective business relationships with **outside law-enforcement employers**—Limestone County, the Hayden Police Department, and the Oneonta Police Department. (FAC ¶ 175.) The individual Defendants are unquestionably strangers to those external prospective

relationships. The FAC alleges the Defendants knew that Plaintiff was applying for outside law-enforcement work—indeed Chief Holmes's threat to ensure Plaintiff would never get such work confirms the knowledge requirement (FAC ¶ 194(f))—and the FAC alleges intentional interference through the selective RADIUS entries and the dissemination of stigmatizing material to the media. (FAC ¶¶ 159, 175, 199(12).) The three concrete denials supply the damages element.

Whether each Defendant's conduct caused each particular denial is the kind of fact-bound, employer-specific question that *Iqbal* does not require be pleaded with particularity. The FAC alleges enough to put each Defendant on notice of the conduct attributed to him and the resulting harm.

### L. Count IX States a Plausible Breach of Contract / Promissory Estoppel Claim.

Defendants' argument depends on framing the Privacy Act Notice as a freefloating document with no contractual significance. The FAC frames it differently and the Court must accept the FAC's framing at this stage. The Notice is alleged to be an enforceable term of the City's employment relationship with Plaintiff: an express written promise that the contents of his application would not be "disseminated to individuals or entities other than the City of Priceville except as required by police business or as required by subpoena or other judicial or administrative order." (Doc. 12-5; FAC ¶¶ 211–16.)

Alabama recognizes that an employer's written promises in employmentapplication materials and handbooks may bind the employer when the employee accepts and performs in reliance on them. *Hoffman-La Roche, Inc. v. Campbell,* 512 So. 2d 725, 733–35 (Ala. 1987). The Notice was a definite, unambiguous promise; Plaintiff accepted by submitting his application materials and accepting employment; consideration was furnished by both his submission of the sensitive personal information sought and his rendering of services. *Ex parte Grant,* 711 So. 2d 464, 465 (Ala. 1997). At a minimum, the FAC pleads in the alternative a promissory estoppel theory. (FAC ¶ 217.) Whether the promise should be enforced as a contract term, or alternatively under promissory estoppel, is a merits question for development on the record.

The breach is direct: the FAC alleges that on or about October 8, 2025 Defendants Heflin and Sanderson released Plaintiff's unredacted personnel file—including home address, identifying information, and disciplinary records—to TMZ, CNN, the New York Post, the New York Times, and the Daily Mail. (FAC ¶¶ 199(5), 215.) None of the three exceptions in the Notice (police business, subpoena, judicial or administrative order) is alleged or apparent. Municipal contract immunity does not extend to a city's breach of its own express written promise. *City of Prichard v. Kelley,* 292 Ala. 385, 295 So. 2d 414 (1974); Ala. Code § 11-47-190.

**M. Count X States a Plausible Defamation Per Se Claim.**

The elements of defamation in Alabama are well-known. *Wal-Mart Stores, Inc. v. Smitherman,* 872 So. 2d 833, 840 (Ala. 2003). The FAC alleges them. (FAC ¶¶ 219(a)–(e).)

***1. The publications were not made within a quasi-judicial proceeding.***

Defendants invoke the absolute privilege recognized in *Webster v. Byrd,* 494 So. 2d 31 (Ala. 1986). That privilege protects "communications made in the course of" a quasi-judicial proceeding and only where the communication is "relevant or pertinent" to that proceeding. *Id.* at 35–36. It does not protect republications **outside** the proceeding—such as press releases, public statements, or media disclosures of records. *Nelson v. Lapeyrouse Grain Corp.,* 534 So. 2d 1085, 1093–94 (Ala. 1988); *Restatement (Second) of Torts* § 587 cmt. e (1977). The FAC alleges the stigmatizing statements—the "no remorse" finding, the contents of the Certification, and the unredacted personnel file—were **disseminated to national media** on or about September 10 and October 8, 2025—dates that **preceded** the City Council appellate hearing of October 13, 2025. (FAC ¶¶ 199(5), 215, 219; Doc. 12-4.) Communications to TMZ, Fox 54, WAAY 48, CNN, the New York Post, the New York Times, and the Daily Mail cannot be characterized as in-hearing communications by any stretch.

***2. "No remorse" as a certified finding is fact, not opinion.***

Defendants insist the "no remorse" characterization is non-actionable opinion. Mayor Heflin himself certified it as a finding of fact in the Certification of Findings and Discipline. (Doc. 12-1.) An official sworn finding presented as a fact is treated as fact for defamation purposes. *Milkovich,* 497 U.S. at 18–21. Heflin's subsequent admission that the "no remorse" wording was "bad wording"—coupled with his refusal to retract or correct the publicly disseminated finding (FAC ¶ 219(d))—is direct evidence of knowing falsity or, at minimum, reckless disregard for truth, satisfying the actual-malice standard at the pleading stage. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964); *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 510–11 (1991).

### 3. *Defamation per se.*

The publications imputed criminal recklessness, professional dishonesty, and conduct incompatible with the duties of a law-enforcement officer. (FAC ¶ 219(c).) Statements that injure a person in his trade or profession are defamation per se under Alabama law and damages are presumed. *Delta Health Grp., Inc. v. Stafford,* 887 So. 2d 887, 895 (Ala. 2004); *Blevins v. W.F. Barnes Corp.,* 768 So. 2d 386, 390 (Ala. Civ. App. 2000).

## N. State-Agent Immunity Does Not Bar the State Law Claims.

Under *Ex parte Cranman,* 792 So. 2d 392, 405 (Ala. 2000), state-agent immunity is unavailable where the agent (a) acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law," or (b) violated "constitutional or statutory rights." *Id.* The defendant bears the initial burden of demonstrating entitlement to the immunity, and the burden then shifts to the plaintiff to show that one of the exceptions applies. *Ex parte Hayles,* 852 So. 2d 117, 120 (Ala. 2002). The FAC plausibly alleges all three categories: willful and malicious retaliation animated by personal political stake (FAC ¶¶ 71, 194, 196, 266); conduct beyond the scope of any legitimate authority (deliberate suppression of exculpatory evidence; unauthorized public release of an unredacted personnel file; selective directing of mandatory state-law reporting); and violations of constitutional and statutory rights (Ala. Code §§ 41-13-7, 41-13-7.1, 36-21-55.1, plus the constitutional provisions surveyed above). The *Cranman* exceptions are fact-bound and inappropriate for resolution on the pleadings. *Ex parte Butts,* 775 So. 2d 173, 177–78 (Ala. 2000); *Ex parte Yancey,* 8 So. 3d 299, 304–05 (Ala. 2008).

Section 6-5-338 peace-officer immunity likewise does not extend to malicious or unlawful acts; it tracks the *Cranman* framework. *Ex parte City of Tuskegee,* 932 So. 2d 895, 904–05 (Ala. 2005). Whether each Defendant acted willfully, maliciously, beyond authority, or under a mistaken interpretation of the law cannot be decided on the FAC's well-pleaded allegations.

### O. Defendants' Exhibits May Not Be Treated as Establishing Disputed Facts.

Defendants ask the Court to credit Doc. 12-1 (the Mayor's Certification) and Doc. 12-4 (the Council Decision) as evidence at the pleading stage. *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005), permits consideration of an attached exhibit only where it is **both** central to the plaintiff's claim **and** undisputed; *Horsley v. Feldt,* 304 F.3d 1125, 1135 (11th Cir. 2002), reinforces that *disputed* content cannot be credited at this stage. Doc. 12-1 contains the very findings the FAC challenges as the product of bias, suppression, and predetermination. The Court may take notice that the documents exist; it may not credit their disputed factual recitations against the well-pleaded allegations of the FAC. *Iqbal,* 556 U.S. at 678.

### O.5 The Pending State Certiorari Proceeding Does Not Bar This Action.

To the extent the Court sua sponte considers abstention, none applies. *Younger v. Harris,* 401 U.S. 37 (1971), is now narrowly limited to three exceptional categories—criminal prosecutions, civil enforcement actions akin to criminal, and orders uniquely in furtherance of the state court's ability to perform its judicial functions. *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 78 (2013). An Alabama common-law writ of certiorari from a personnel decision is none of these. Nor does *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976), warrant abstention: the proceedings are not parallel because they seek different

remedies and assert different rights, and the federal damages claims cannot be litigated in the state cert action. *Ambrosia Coal & Constr. Co. v. Pages Morales,* 368 F.3d 1320, 1330 (11th Cir. 2004).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court **DENY** Defendants' Motion to Dismiss in its entirety. Each count plausibly states a claim under controlling authority; every immunity and privilege defense turns on disputed facts inappropriate for pleading-stage resolution; and Defendants' attempt to convert this Rule 12(b)(6) proceeding into a referendum on the disputed contents of their own administrative exhibits is foreclosed by *Day v. Taylor* and *Iqbal*.

## EXHIBIT INDEX

Exhibit 1 — Affidavit of Marlon Marrache (law-enforcement expert)
Exhibit 2 — Affidavit of Assistant Chief Jason Wilbanks
Exhibit 3 — Affidavit of Terry Jones (former Priceville Investigator)

Respectfully submitted,

*/s/ Scott T. Morro*
Scott T. Morro (ASB-4954-C30M)
Attorney for Plaintiff
Morro Law Center, LLC
P.O. Box 1644 | Gardendale, AL 35071

Tel: (205) 631-6301 | Fax: (205) 285-8542
morrolawcenter@bellsouth.net

**CERTIFICATE OF SERVICE**

I certify that on this 21[nd] day of May, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record. For any party not served by CM/ECF, a copy will be served via electronic mail and/or U.S. Mail.

*/s/ Scott T. Morro*
OF COUNSEL