FILED
2026 Aug-12 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **GARRY CHAPMAN,**<br>**Plaintiff**,<br>**v.**<br>**CITY OF PRICEVILLE,** ***et al.*****,**<br>**Defendants**. | **Case No. 5:26-cv-84-HDM** |

# ORDER

This case is before the court on its *sua sponte* Order to Show Cause why Attorney Scott Thomas Morro, representing Plaintiff Garry Chapman, should not be sanctioned for including false citations, quotations, and representations in a brief submitted to the court. (Doc. 32). Having considered Morro's response to the court's Show-Cause Order, (doc. 34), and his explanation during the hearing held on August 6, 2026, the court **SANCTIONS** Morro.

## BACKGROUND

On May 4, 2026, Defendants City of Priceville, Sam Heflin, Jerry Holmes, Woody Sanderson, and Jason Wigginton moved to dismiss Garry Chapman's Amended Complaint. (Doc. 11). On May 21, Chapman's attorney, Scott Thomas Morro, filed a response in opposition. (Doc. 15). In their subsequently filed reply

brief, Defendants noted incorrect citations in Morro's response brief, including two fabricated cases. (*See* Doc. 28 at 13–14 n.4). Nearly three weeks later, Morro filed a "Notice of Correction of Citations" withdrawing one of the fabricated case citations noted by Defendants and proffering another citation in its place. (*See* Doc. 31). The notice did not address the other fabricated case, nor did it address the as-yet-undiscovered errors at issue here.

As the court explained in its Show-Cause Order, (doc. 32), Morro's brief is rife with errors. First, as noted by Defendants in their reply brief, (doc. 28 at 13–14), he cites two cases that do not appear to exist: *Williams v. City of Anniston*, 396 So. 2d 707, 708 (Ala. Civ. App. 1981), (doc. 15 at 18), and *City of Prichard v. Kelley*, 292 Ala. 385, 295 So. 2d 414 (1974), (doc. 15 at 29).

Second, Morro's response attributes quotations to seven cases that do not contain the quoted material. Those quotations, along with the relevant surrounding text and the cases to which they are cited, are as follows:

> [T]he question is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010).

(doc. 15 at 6);

> Where qualified immunity or another affirmative defense is raised at the pleading stage, dismissal is appropriate "only when the complaint shows on its face that the defendants are entitled to immunity," *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

(doc. 15 at 6);

> Defendants argue that the Council's reduction of the discipline severs causation as a matter of law under *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328 (11th Cir. 1999). It does not, for three reasons. First, *Stimpson* requires a **genuinely independent** decisionmaker. "When the biased recommender and the actual decisionmaker are not the same person or persons, the bias of the recommender alone is not enough to taint the decision—unless the plaintiff can show that the recommender had such influence or leverage over the actual decisionmaker that it is proper to consider the recommender as being the actual decisionmaker." *Id.* at 1332.

(doc. 15 at 13–14);

> Whether comparators are "similarly situated in all material respects" under *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204–06 (11th Cir. 2007), is fact-bound and not properly resolved on a motion to dismiss. *Id.* at 1206 ("the 'similarly situated' requirement must be evaluated in light of the context of the action").

(doc. 15 at 16);

> The reviewing court "may not retry the case but may only review the validity of the proceedings before [the agency]." *Personnel Bd. of Jefferson Cnty. v. Bailey*, 475 So. 2d 863, 866 (Ala. Civ. App. 1985).

(doc. 15 at 18) (alteration in original);

> "[N]o man is permitted to try cases where he has an interest in the outcome," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), . . . .

(doc. 15 at 19) (alteration in original); and

> An "official municipal policy of some kind must be the moving force" behind the violation, *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011); . . . .

(doc. 15 at 26).

Finally, as noted by Defendants in their reply, Morro's response contains at least two other statements unsupported by the cited authority. (*See* Doc. 28). These misstatements, along with the cited authority, are as follows:

> The FAC also alleges direct evidence of motive: Chief Holmes's explicit threat after Plaintiff's reinstatement to ensure Plaintiff would "never obtain[] employment in law enforcement again," coupled with his immediate direction to make selective RADIUS entries. (FAC ¶ 194(f).) That is more than enough at the pleading stage. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

(doc. 15 at 13); and

> Municipal contract immunity does not extend to a city's breach of its own express written promise. *City of Prichard v. Kelley*, 292 Ala. 385, 295 So. 2d 414 (1974); Ala. Code § 11-47-190.

(doc. 15 at 29) (containing both a nonexistent case (*City of Prichard*, *see supra*) and a misrepresentation of a real legal authority (Ala. Code § 11-47-190)).

On this basis, on July 9, 2026, the court ordered Morro to "show good cause, if there be any, why he should not be sanctioned—based on the false citations, quotations, and representations identified in this Order and any additional misrepresentations of law discovered in Mr. Morro's filings in this case—under Federal Rule of Civil Procedure 11, the court's inherent authority, Local Rule 83.1(f), and/or Alabama Rule of Professional Conduct 3.3 for making false statements of fact or law to the court." (Doc. 32 at 4). The court also ordered him to "submit a sworn declaration that provides a thorough explanation for how any disputed filing, including the response brief, was generated." *Id.* at 5 (citation

omitted). Specifically, he was ordered to "explain precisely how the allegedly fabricated citations, quotations, and other representations were generated." *Id.*

Morro filed his response on July 15, 2026. (Doc. 34). In it, he "does not contest the [c]ourt's findings, offers no excuse for them, and accepts full personal responsibility." *Id.* at 1. He withdraws the erroneous citations, quotations, and representations and offers corrected ones in their place. *Id.* at 2. In explaining how the misrepresentations occurred, Morro states that he "practices alone," *id.*, though he later states that "[t]he response in opposition to Defendants' motion to dismiss was researched and drafted by Plaintiff, Garry Chapman, acting in the capacity of paralegal," *id.* at 4 (citation omitted).

He says he did not have access to Westlaw or Lexis, instead relying primarily on Google Scholar and secondarily on JD Supra and Lexology, *id.* at 2, which he used to review and edit Chapman's work, *id.* at 4. He further states that "[c]itations and quotations were transcribed from those [sources'] secondary discussions into the brief without retrieving and reading the underlying opinions." *Id.* He "does not offer his resources or workload as an excuse," correctly noting that "[t]he duty of candor does not scale with firm size, and every error identified in the [Show-Cause] Order would have been caught had counsel pulled and read each cited case before filing." *Id.*

The court held a hearing on the issue on August 6, 2026. (*See* Doc. 32). At that hearing, Morro reiterated, in response to the court's questions, that his client, Plaintiff Garry Chapman—not Morro—wrote the response brief primarily at issue. Transcript of 8/6/2026 Show-Cause Hearing at 5. Chapman does not have a law degree. *Id.* After Chapman wrote the response brief, Morro "read it," "tweak[ed] it," and "tr[ied] to make sure that it [was] correct." *Id.* Morro stated for the first time during the hearing that Chapman also wrote the 179-page Amended Complaint, which the court recently dismissed as a shotgun pleading and which also contained a false citation. *Id.* at 10. Morro told the court that it's his standard practice to allow his client to draft legal documents, not only in this case but also in his practice more generally, "depending on the ability of the client." *Id.* at 9–10. Morro did not pull or read the individual cases cited by Chapman in the response brief or the Amended Complaint. *Id.* at 6.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Citations to fake legal authorities pose a serious threat to the fair administration of justice and the integrity of the judicial system, and they require equally serious sanctions. *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1246 (N.D. Ala. 2025). This court has stated,

> **Even in cases where lawyers who cite AI hallucinations accept responsibility and apologize profusely, much damage is done**. The court spends time reviewing materials, holding hearings, deliberating

> about sanctions, and explaining its ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished.

*Miller v. Regions Bank*, No. 2:24-cv-1324-HDM, ––– F. Supp. 3d at –––, 2026 WL 1430381, at *5 (N.D. Ala. May 21, 2026) (alterations accepted) (quoting *State Nat'l Ins. Co., Inc. v. Treadwell*, No. 2:24-cv-1424-HDM, ––– F. Supp. 3d at –––, 2026 WL 861076, at *2 (N.D. Ala. Mar. 27, 2026)). Other harms affect the judicial system more broadly:

> There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

*Johnson*, 792 F. Supp. 3d at 1257 (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)).

As this court has previously stated,

> If any lawyer is under the misapprehension that, as long as he brings the correct issues to the court's attention, the court will come to the correct conclusion on its own and therefore he need not worry about the granular accuracy of his citations, that lawyer must shift his mindset. The importance of this topic is not solely rooted in some high-minded ideal of the legal profession as an honorable one. In order to fairly, efficiently, and, above all, *accurately* adjudicate cases, federal courts *must* be able to rely on the specific authorities cited by parties, not simply the broad principles of law they state. The federal judiciary has neither the resources nor the obligation to do a lawyer's job for him, especially given his clients are already paying him to do that job. Every second the court spends doing a lawyer's job for him—as this court was

> compelled to do for [Morro]—is a disservice to his clients and a waste of taxpayer dollars that needlessly defers other necessary work.

*Miller*, —— F. Supp. 3d at ——, 2026 WL 1430381, at *5; *Treadwell*, —— F. Supp. 3d at ——, 2026 WL 861076, at *2.

Accordingly, the court makes the following conclusions of law and findings of fact based on Morro's conduct.

## I. Sanctions Authority

Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper[,] . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*, . . . the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2) (emphasis added). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include nonmonetary directives." Fed. R. Civ. P. 11(c)(4).

Rule 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47

(1991). It focuses on "the signer's conduct" "at the time of filing." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) (emphasis and internal quotation marks omitted). "[T]he purpose of Rule 11 as a whole is to bring home to the individual signer his personal, *nondelegable* responsibility." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989) (emphasis added).

To impose Rule 11 sanctions *sua sponte*, the court must find that the offending conduct is "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). But, as this court has stated,

> This court does not understand that standard to require a finding of subjective bad faith. Such a requirement would be inconsistent with explanations from the Supreme Court and the Eleventh Circuit that Rule 11 is objective, *see, e.g.*, *Chambers*, 501 U.S. at 47; *Jones*, 49 F.3d at 695, and the reality that "[a]s originally drafted, Rule 11 set out a subjective standard, but the Advisory Committee determined that this standard was not working," *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 549 (1991).

*Johnson*, 792 F. Supp. 3d at 1258; *Miller*, —— F. Supp. 3d at ——, 2026 WL 1430381, at *6.[1]

[1] Rule 11 is not the only sanctioning authority available to the court. First, Local Rule 83.1(f) provides that attorneys may be disciplined for acts or omissions that are inconsistent with the local rules, the *Alabama Rules of Professional Conduct*, and the *American Bar Association Model Rules of Professional Conduct.* N.D. Ala. R. 83.1(f). It further provides that "[d]iscipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case, ineligibility for appointment as court-appointed counsel, ineligibility to appear [*pro hac vice* or on behalf of the United States], monetary sanctions, or any other sanction the court may deem appropriate." *Id.* Second, Alabama Rule of Professional Conduct 3.3 provides that "[a] lawyer shall not knowingly . . . [m]ake a false statement of material fact or law to a tribunal." Ala. Rules of Pro. Conduct r. 3.3(a)(1). The comments to the Rule provide that "an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on

## II. False Statements of Law and Conclusions as to Morro

The court finds, based upon its own careful review and Morro's admission, (doc. 34 at 1–2), that the purported citations, quotations, and representations of law in the filings at issue were fabricated. Accordingly, by citing nonexistent cases and attributing nonexistent quotations and propositions of law to actual authorities, Morro made false statements of law.

Morro admits that his nonlawyer client drafted the filings at issue and that Morro submitted the filings to the court without ensuring that the assertions within were legally correct. Transcript of 8/6/2026 Show Cause Hearing at 5–10. This is no different than submitting AI-generated work product to the court without thoroughly checking it.[2] Morro signed the filings, and he is responsible for them. Accordingly, the court finds that Morro's conduct is "akin to contempt," *Kaplan*, 331 F.3d at 1255,

the basis of a reasonably diligent inquiry." Ala. Rules of Pro. Conduct r. 3.3 cmt. They further provide that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." *Id.* Finally, the court's sanctioning authority is not limited to these rules, as it may also sanction attorneys under its inherent authority. *Chambers*, 501 U.S. at 43 (citing *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)); *Johnson*, 792 F. Supp. 3d at 1258. Because Rule 11 provides adequate sanctions in this case, the court, in its discretion, chooses not to pursue sanctions under other statutes or its inherent authority.

[2] Indeed, it appears likely from the nature of the misrepresentations that the filings at issue were generated by artificial intelligence. However, because Chapman—the original creator of these documents—is not an officer of the court, the rules of professional conduct do not apply to him. And because he did not sign the filing submitted to the court, Federal Rule of Civil Procedure 11 does not apply either.

as it flagrantly disregards his obligations as an attorney under Rule 11. *Miller*, —— F. Supp. 3d at ——, 2026 WL 1430381, at *7.

## SANCTIONS

Rule 11 states that if an attorney presents to the court "legal contentions" that "are [not] warranted by existing law," that attorney may be sanctioned after notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(b)(2), (c)(1). Morro presented to the court numerous citations, purported quotations, and representations that either do not exist or are unsupported by the cited law. *See supra*. He has been given notice and a reasonable opportunity to respond. (*See* Docs. 32, 34); *see also* Transcript of 8/6/2026 Show Cause Hearing.

Accordingly, the court must now determine an appropriate sanction under Rule 11. Appropriate and reasonable sanctions must "(1) have sufficient deterrent force to make this misuse of AI unprofitable for lawyers and litigants, (2) correspond to the extreme dereliction of professional responsibility that sham citations reflect (whether generated by artificial or human intelligence), and (3) effectively communicate that made-up authorities have no place in a court of law." *Johnson*, 792 F. Supp. 3d at 1246. "Rule 11 assigns particular value to the deterrent function of a sanction." *Id.* at 1265 (citing Fed. R. Civ. P. 11(c)(4) (providing that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated")).

Before deciding on sanctions, the court addresses two possible mitigating circumstances.

First, Morro filed a "Notice of Correction of Citations" before the court issued its Show-Cause Order. (*See* Doc. 31). The court does not wish to dissuade practitioners from correcting their mistakes for fear of being sanctioned; indeed, that is precisely what attorneys *should* do if they realize they have submitted fake citations, quotations, or the like in a court filing. Here, however, Morro submitted this notice *after* his opposing counsel called him out for including fabricated citations to *Williams* and *City of Prichard*. Furthermore, Morro corrected only one of the two false case citations identified by Defendants—*Williams*—along with several incorrect record citations. (Doc. 31). He did not correct the false *City of Prichard* citation until his response to the court's Show-Cause Order. (*See* Docs. 31, 34). And he apparently did not take the initiative to check his other citations—or he preferred not to bring them to the court's attention—as he did not, in that notice, correct any of his seven false quotations. (Doc. 31). Morro's notice, then, was not preemptive action. Rather, it was taken only after it became clear to him that the court was aware of his misrepresentations, and it corrected only those few misrepresentations he knew definitively the court was aware of. This is equivalent to an attorney correcting his citations after the court issues a show-cause order on the issue, and the court will treat it in the same manner.

The court wishes to be clear, though, that had Morro, on his own initiative and without any assurance that the court would have caught the misrepresentations at all, filed a notice of correction, he would not have been sanctioned for the initial false citations. Attorneys should not wait to take corrective action until they know whether they will get in trouble for failing to do so. While an attorney may avoid sanctions by fixing the errors on his own initiative, once the court or another party forces the issue, that ship has sailed.

Second, in his response to the court's Show-Cause Order, Morro "accept[ed] full personal responsibility" for the misrepresentations and offered "an unreserved apology to the [c]ourt, to opposing counsel, and to his client." (Doc. 34 at 1). He also admitted, in his attached declaration, that his client, Plaintiff Chapman, wrote the problematic response brief. *Id.* at 4.[3] The court recognizes and appreciates this. Although it has repeatedly stated that "[e]ven in cases where lawyers who [submit false citations] accept responsibility and apologize profusely, much damage is done," and thus that some sanctions are warranted regardless of such contrition, *Miller*, ––– F. Supp. 3d at –––, 2026 WL 1430381, at *5, it generally "reserves

[3] Morro's response to the court's Show-Cause Order did not disclose, however, that Chapman also drafted the 179-page Amended Complaint. That omission is notable because Morro's own review identified an additional false citation in the Amended Complaint, and the court's Show-Cause Order required a "thorough explanation" of how "any disputed filing" was generated. (Doc. 32 at 5; Doc. 34 at 3–5). It was not until the show-cause hearing that Morro disclosed Chapman's authorship of the Amended Complaint. Transcript of 8/6/2026 Show-Cause Hearing at 10.

imposition of harsher sanctions for . . . dishonesty in attempting to cover up" one's wrongdoings, *id.* at *7. *Compare id.* (publicly reprimanding an attorney, disqualifying him from the case, suspending him from practicing in the Northern District of Alabama, and referring the case to the Alabama State Bar), *with Treadwell*, ––– F. Supp. 3d at –––, 2026 WL 861076, at *4 ("Mindful of the fact that Mr. May has been apologetic and forthcoming with his lack of diligence and use of generative AI, the court finds that any greater sanction [than a public reprimand] is unnecessary.").

Accordingly, the court will not, in this instance, refer this matter to the Alabama State Bar, order a monetary fine, disqualify Attorney Morro from this case, or suspend him from practice in the Northern District of Alabama, though he is **WARNED** that each of these options is on the table should he commit a similar infraction in the future. Nonetheless, the sanctions imposed by this court must deter similar conduct, make such conduct unprofitable, and reflect the seriousness of submitting fabricated authorities to the court. *Johnson*, 792 F. Supp. 3d at 1246.

## CONCLUSION

For the reasons explained herein, the court **ORDERS** as follows:

1. The court **PUBLICLY REPRIMANDS** Attorney Scott Thomas Morro.

2. To effectuate his reprimand, the court **ORDERS** Attorney Scott Thomas Morro to provide a copy of this Order to his opposing counsel and the presiding

judge in every pending state or federal case in which he is counsel of record,[4] as well as to Plaintiff Garry Chapman. Attorney Scott Thomas Morro must comply with this requirement **by 4:00 p.m. on August 24, 2026,** and must certify to the court within twenty-four hours of that deadline that the requirement has been met.[5]

3. To further effectuate the reprimand and deter similar misconduct by others, the Clerk of Court is **DIRECTED** to submit this Order for publication in the Federal Supplement.

**DONE** and **ORDERED** on August 12, 2026.

**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

[4] By this, the court refers to the individual judge in every case in which Morro has made an appearance, not merely the chief judges in the districts or circuits in which Morro has pending cases.

[5] The court cautions Morro against assuming the court will not find out if he fails to comply with the court's notification requirements. As others have discovered, failure to comply based on such an assumption is contempt of court and a sure way to get one's case referred to the Alabama State Bar, an outcome that Morro has thus far avoided.